E-FILED
Tuesday, 21 November, 2017  02:39:59 PM
Clerk, U.S. District Court, ILCD

lv

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

JASMINE MURILLO, individually and as Plenary Guardian of the )
Estate and Person of MARIO RAMIREZ, disabled, )
          )
          Plaintiff, )
-vs- )No.17 CV 3181
          )
WEXFORD HEALTH SOURCES, INC., a corporation; ) Judge Michael M. Mihm
THE BANTRY GROUP CORPORATION, a corporation, individually, and )
d/b/a WEXFORD HEALTH SOURCES, INC.; and )
DR. FRANCIS KAYIRA, )
          Defendants. )

**PLAINTIFF DEMANDS TRIAL BY JURY**

**FIRST AMENDED COMPLAINT AT LAW**

       NOW COMES the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of

the Estate and Person of MARIO RAMIREZ, disabled, by her attorneys, GOLDSTEIN, FLUXGOLD

& BARON, P.C., and having duly obtained leave of Court, for her First Amended Complaint at Law,

complaining of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; THE

BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH

SOURCES, INC.; and DR. FRANCIS KAYIRA, and each of them, states as follows:

**PARTIES**

       That on or about May 23, 2015, and for some time prior and subsequent thereto, the disabled

Plaintiff, MARIO RAMIREZ, was imprisoned at the Graham Correctional Center in the City of

Hillsboro, State of Illinois.   That prior to his imprisonment, the disabled Plaintiff, MARIO

RAMIREZ, was a resident of the United States of America in the City of Chicago, County of Cook

and State of Illinois. The disabled Plaintiff has been released on parole and currently resides in the

City of Chicago, County of Cook and State of Illinois. That the Plaintiff, JASMINE MURILLO, was



PLAINTIFF'S
EXHIBIT
_A_

at all times relevant herein, a citizen of the United States and of the State of Illinois and is a resident of the City of Chicago, County of Cook and State of Illinois.  The Plaintiff, JASMINE MURILLO, was appointed by Probate Court of Cook County Judge Kathleen M. McGury as the Plenary Guardian of the Estate and Person of Mario Ramirez, disabled, on March 24, 2017.  (See attached March 24, 2017 Order, attached hereto as <u>Plaintiff's Exhibit "A"</u>).

Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., are a corporation and a parent corporation, respectively, that operate, manage, control and/or provide medical services, treatment and facilities at the correctional facilities and/or prisons of the Illinois Department of Corrections, including Graham Correctional Center.  These correctional facilities and/or prisons are located throughout the State of Illinois, including the Central District of Illinois.  DR. FRANCIS KAYIRA is a physician who provided medical treatment and care to the disabled Plaintiff, MARIO RAMIREZ, at the Graham Correctional Center.  DR. FRANCIS KAYIRA is sued individually and as agent, apparent agent, employee and/or physician of Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.

## JURISDICTION and VENUE

That this is an action against the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.; and DR. FRANCIS KAYIRA, to redress deprivations under color of law of the rights, privileges and immunities secured by the Eighth Amendment to the United States Constitution and Title 42, U.S.C., Section 1983, and, pleading in the alternative, for negligent and/or willful and wanton medical care and treatment under State of Illinois law.

That the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., operate, manage, control and/or provide  sufficient contacts in the Central District of Illinois to establish venue, including but not limited to medical services, treatment and facilities at the correctional facilities and/or prisons of the Illinois Department of Corrections, including Graham Correctional Center in the City of Hillsboro, State of Illinois. 28 U.S.C. §1391(c)(d).

### CAUSES OF ACTION

### COUNT I
**Federal §1983 Civil Rights Claim against Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.**

1.      That this is a civil action for damages to redress deprivations under color of law of the rights, privileges and immunities secured by the Eighth Amendment to the United States Constitution and Title 42, U.S.C., Section 1983.

2.      That during the month of May 2015, and at all times prior and subsequent thereto, the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., were engaged in offering medical care and attention, facilities and supplies to inmates, including the disabled Plaintiff herein, at the Graham Correctional Center, in the City of Hillsboro and State of Illinois, and engaged on its staff various physicians and medical personnel.

3.      That at all times relevant herein, the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., held itself out, pretended and otherwise informed Graham Correctional Center's  inmates, and more particularly, in the instance of the disabled Plaintiff, MARIO RAMIREZ, that Defendants, WEXFORD HEALTH SOURCES, INC., a

corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., had and possessed the requisite skill, know-how, facilities, personnel, equipment and information to properly care for and treat the disabled Plaintiff, MARIO RAMIREZ.

4.      That in May 2015, and for some time prior and subsequent thereto, the disabled Plaintiff, MARIO RAMIREZ, was imprisoned at the Graham Correctional Center and was placed under the custody, ward, care and supervision of the Graham Correctional Center prison and Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its physicians, staff, supervisors, employees, agents and apparent agents, including but not limited to, DR. FRANCIS KAYIRA, as aforesaid; that the disabled Plaintiff possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend or cure himself.

5.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was an inmate and dependent upon and under the control of Graham Correctional Center prison and Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its physicians, staff, supervisors, employees, agents and apparent agents, including but not limited to, DR. FRANCIS KAYIRA; and that the disabled Plaintiff, as a prisoner, was deprived of his normal opportunities for protection, treatment and care.

6.      That at all times mentioned herein, the Defendant, DR. FRANCIS KAYIRA, was a physician duly licensed under the laws of the State of Illinois and an employee, physician, agent and/or apparent agent, of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD

4

HEALTH SOURCES, INC., and as such practiced his profession in the medical facilities of the Graham Correctional Center pursuant to his employment.

7.     That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, cooperated fully with the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, DR. FRANCIS KAYIRA.

8.     That at all times material herein, and for some time prior to, the disabled Plaintiff, MARIO RAMIREZ, was experiencing symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and tachycardia, during his incarceration at Graham Correctional Center.

9.     That Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., offered and provided said medical care and services at Illinois Department of Corrections correctional facilities and/or prisons pursuant to a five year contract (with an option to renew for another five years) with the Illinois Department of Corrections entered into in May 2011.

10.     That said contract was in effect during the Month of May 2015, and at all times relevant herein.

11.     Said 2011 contract includes certain fixed rate compensation and payment schedules which include monthly allowances, including but not limited to a "Hospital Utilization Threshold" in which monthly payments to Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., from Illinois Department of Corrections/Graham Correctional Center

are reduced by the amounts that outside hospital costs exceed the monthly allowance.

12.     In addition, as to the Graham Correctional Center, the fixed payment portion of the contract provides compensation to Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., for three hundred and fourteen (314) different prisoners a month within Graham Correctional Center receiving treatment by Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.

13.     If the number of monthly prisoners receiving treatment by Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., at Graham Correctional Center exceeds the base rate (314), Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., are compensated an additional $0.01 per offender per month.

14.     Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., do not receive additional compensation for prisoners requiring additional or multiple visits.

15.     The Contract budget only allows and/or permits compensation for one physician (medical director) at Graham Correctional Center and the budget only compensates a physician for 40 hours per week.

16.     That the aforementioned fixed compensations, payments, budgets, adjustments and

6

"Hospital Utilization Threshold" also apply to the entire State of Illinois' prison and correctional facilities.

17.     As part of a 2015 class action lawsuit, which Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and/or THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., were named defendants, a Court-appointed panel of experts released a four hundred five (405) page report finding that state of medical care in Illinois Department of Corrections' prisons and correctional facilities was so poor that it constituted cruel and unusual punishment.

18.     That the care, customs, policies and practices of Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and/or THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., have resulted in over 1,300 lawsuits in the past ten years, including at least forty-five (45) cases currently pending in the Central District of Illinois where the Defendants are named defendants.

19.     That it then and there became and was the duty of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., to institute, allow and/or maintain customs, policies and/or practices that render medical services consistent with the constitutional necessities of the prisoners therein, so as not to cause injury to said patients and prisoners, including the disabled Plaintiff; and to institute, allow and/or maintain customs, policies and/or practices that do not cause or display an utter indifference to the health, well-being and constitutional rights of said patients and prisoners, including the disabled Plaintiff.

20.     That at all times material herein, notwithstanding their aforesaid duties, while the disabled Plaintiff, MARIO RAMIREZ, was incarcerated at Graham Correctional Center, the

Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by reason of the aforementioned contract, fixed compensations, budgets, payments, adjustments, per prisoner additional compensation, "Hospital Utilization Threshold" and/or prior and pending lawsuits, instituted, allowed and/or maintained the following widespread practices, customs and/or policies:

(a)     Defendants regularly and systematically compromised care to increase profit; or

(b)     Defendants regularly and systematically provided minimum and/or utterly indifferent care to increase profit; or

(c)     Defendants regularly and systematically maximized new patient intake to increase profit; or

(d)     Defendants regularly and systematically prioritized new patient intake over existing patient follow-up or extended care to increase profit; or

(e)     Defendants failed to train employees; or

(f)     Defendants failed to properly and sufficiently staff Graham Correctional Center medical facilities; or

(g)     Defendants regularly and systematically permitted and allowed patients to be regularly seen and/or treated by non-physician personnel and/or without proper and adequate physician supervision.

21.     That as a direct and proximate result of one or more of the aforementioned customs, policies and/or practices of the Defendants, the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., encouraged, permitted, caused and allowed: an utter

8

and/or deliberate indifference towards the health, well-being and constitutional necessities of the disabled Plaintiff, MARIO RAMIREZ; an inexplicable delay and/or lack of treatment for the disabled Plaintiff which served no penological interest; a failure to timely and/or properly and adequately diagnose, treat and/or provide medical treatment for the disabled Plaintiff's medical condition, including but not limited to hypovolemia due to dehydration, while he was incarcerated at Graham Correctional Center; to wit, on and after May 23, 2015:

(a)     The Defendants knew the disabled Plaintiff was experiencing symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, for at least one (1) week prior to the first May 23, 2015 medical encounter;

(b)     The disabled Plaintiff continued to experienced symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, through June 4, 2015;

(c)     The Defendants knew the disabled Plaintiff was experiencing continued symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, through June 4, 2015, including but not limited to documenting these symptoms at his medical encounters on or about May 23, 2015, May 29, 2015, and June 1, 2015, as well as daily through his June 1, 2015 to June 4, 2015 admission to the Defendant's infirmary at Graham Correctional Center;

(d)     The disabled Plaintiff was not seen or treated by a physician on or about May 23, 2015 and May 29, 2015, even though Defendants knew the disabled Plaintiff was experiencing continued symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia.

(e)     The Defendants knew or should have known said continuing symptoms and/or signs of hypovolemia posed serious and/or substantial risks to the health and well-being of the disabled Plaintiff if not properly treated or if left untreated or undiagnosed, including but not limited to: necrosis, sepsis, brain injury, and/or death;

(f)     Despite the Defendants' aforesaid knowledge of said symptoms and serious and substantial risks to the disabled Plaintiff, the Defendants, in following or practicing one or more of the aforementioned widespread practices, customs and/or policies:

    i.      Failed to properly and adequately monitor the disabled Plaintiff's medical condition in utter and/or deliberate indifference of said risks; or

ii.     Failed to properly and adequately alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

iii.    Improperly and inadequately treated and/or attended to the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

iv.     Failed to properly and adequately and/or timely diagnose disabled Plaintiff's hypovolemia due to dehydration in utter and/or deliberate indifference of said risks; or

v.      Discontinued the disabled Plaintiff's IV fluid administration in spite of continued and/or unresolved symptoms and/or signs of hypovolemia in utter and/or deliberate indifference of said risks.

22.     That as a direct and proximate result of one or more of the aforementioned customs, policies and/or practices of the Defendants that encouraged, permitted, caused and allowed the aforementioned deliberately indifferent actions of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., the disabled Plaintiff, MARIO RAMIREZ, was deprived and/or discontinued from necessary medical treatment in violation of his Eighth Amendment Rights and was thereby injured, including but not limited to: sepsis and necrosis leading to anoxic brain injury and disabled Plaintiff, MARIO RAMIREZ, being in a persistent vegetative state.

23.     That as a direct and proximate result of one or more of the aforementioned customs, policies and/or practices of the Defendants that encouraged, permitted, caused and allowed the aforementioned deliberately indifferent actions of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., the disabled Plaintiff, MARIO RAMIREZ, was then and there injured both internally and externally; that he suffered and continues

to suffer from severe and permanent injuries, including but not limited to: permanent brain injury; that he sustained a severe shock and damage to his nervous system and other systems of his body; that he suffered and continues to suffer from loss of a normal life;  that he suffered and continues to suffer from acute and prolonged physical and mental pain and suffering; that the risk or harm of injury, including but not limited to permanent brain damage, was increased; that his medical condition worsened and his chance of recovery was diminished; that the disabled Plaintiff will suffer from wage loss and became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses; and that the Plenary Guardian of the disabled's Estate and Person, JASMINE MURILLO, became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses, including wage loss.

24.     That the Plaintiff is entitled to her costs and reasonable attorney's fees incurred herein pursuant to 42 United States Code, Section 1988.

WHEREFORE, the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled, prays judgment against Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., for said sum for medical, drug, and incidental expenses and for general damages according to proof, Section 1988 costs and attorney's fees, and for such other and further relief as this court deems just and proper.

## COUNT II
### Federal §1983 Civil Rights Claim against Defendant, DR. FRANCIS KAYIRA

1.     That this is a civil action for damages to redress deprivations under color of law of the rights, privileges and immunities secured by the Eighth Amendment to the United States

11

Constitution and Title 42, U.S.C., Section 1983.

2.　　　That at all times mentioned herein, the Defendant, DR. FRANCIS KAYIRA, was a physician duly licensed under the laws of the State of Illinois, and as such practiced his profession in the medical facilities of the Graham Correctional Center.

3.　　　That in May 2015, and for some time prior and subsequent thereto, the disabled Plaintiff, MARIO RAMIREZ, was imprisoned at the Graham Correctional Center and was placed under the custody, ward, care and supervision of the Graham Correctional Center prison and Defendant, DR. FRANCIS KAYIRA, as aforesaid; that the disabled Plaintiff possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend or cure himself.

4.　　　That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was an inmate and dependent upon and under the control of Graham Correctional Center prison and Defendant, DR. FRANCIS KAYIRA, and that the disabled Plaintiff, as a prisoner, was deprived of his normal opportunities for protection, treatment and care.

5.　　　That in May 2015, and for some time prior and subsequent thereto, Defendant, DR. FRANCIS KAYIRA, did then and there have come under his care and did attend to and treat the disabled Plaintiff, MARIO RAMIREZ, while the disabled Plaintiff was a prisoner at Graham Correctional Center.

6.　　　That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, cooperated fully with the Defendant, DR. FRANCIS KAYIRA.

7.　　　That it then and there became and was the duty of the Defendant, DR. FRANCIS KAYIRA, to render medical services consistent with the constitutional necessities of the prisoners therein, so as not to cause injury to said patients and prisoners, including the disabled Plaintiff, and to not display an utter indifference to the health, well-being and constitutional rights of said patients

12

and prisoners, including the disabled Plaintiff.

8.      That at all times material herein, and for some time prior to, the disabled Plaintiff, MARIO RAMIREZ, was experiencing symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and tachycardia, during his incarceration at Graham Correctional Center.

9.      That at all times material herein, notwithstanding its aforesaid duties, while the disabled Plaintiff, MARIO RAMIREZ, was incarcerated at Graham Correctional Center, the Defendant, DR. FRANCIS KAYIRA, with an utter and/or deliberate indifference towards the health and well-being of the disabled Plaintiff, MARIO RAMIREZ, and in an inexplicable delay and/or lack of treatment for the disabled Plaintiff which served no penological interest, failed to timely and/or properly and adequately diagnose, treat and/or provide medical treatment for the disabled Plaintiff's medical condition, including but not limited to hypovolemia due to dehydration, while he was incarcerated at Graham Correctional Center; to wit, on and after May 23, 2015:

    (a)      The Defendant knew the disabled Plaintiff was experiencing symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, for at least one (1) week prior to the first May 23, 2015 medical encounter;

    (b)      The disabled Plaintiff continued to experienced symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, through June 4, 2015;

    (c)      The Defendant knew the disabled Plaintiff was experiencing continued symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, through June 4, 2015, including but not limited to documenting these symptoms at his medical encounters on or about May 23, 2015, May 29, 2015, and June 1, 2015, as well as daily through his June 1, 2015 to June 4, 2015 admission to the Defendant's infirmary at Graham Correctional Center;

    (d)      The Defendant knew or should have known said continuing symptoms and/or signs of hypovolemia posed serious and/or substantial risks to the health and well-being of the disabled Plaintiff if not properly treated or if left untreated or undiagnosed,

including but not limited to: necrosis, sepsis, brain injury, and/or death;

(e)  Despite the Defendant's aforesaid knowledge of said symptoms and serious and substantial risks to the disabled Plaintiff, the Defendant:

    i.  Failed to properly and adequately monitor the disabled Plaintiff's medical condition in utter and/or deliberate indifference of said risks; or

    ii.  Failed to properly and adequately alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

    iii.  Improperly and inadequately treated and/or attended to the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

    iv.  Failed to properly and adequately and/or timely diagnose disabled Plaintiff's hypovolemia due to dehydration in utter and/or deliberate indifference of said risks; or

    v.  Discontinued the disabled Plaintiff's IV fluid administration in spite of continued and/or unresolved symptoms and/or signs of hypovolemia in utter and/or deliberate indifference of said risks.

10.  That as a direct and proximate result of the deliberately indifferent actions of the Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was deprived and/or discontinued from necessary medical treatment in violation of his Eighth Amendment Rights and was thereby injured, including but not limited to: sepsis and necrosis leading to anoxic brain injury and disabled Plaintiff, MARIO RAMIREZ, being in a persistent vegetative state.

11.  That as a direct and proximate result of the deliberately indifferent actions of the Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was then and there injured both internally and externally; that he suffered and continues to suffer from severe and permanent injuries, including but not limited to: permanent brain injury; that he sustained a severe shock and damage to his nervous system and other systems of his body; that he suffered and continues to suffer from loss of a normal life;  that he suffered and continues to suffer from acute and

14

prolonged physical and mental pain and suffering; that the risk or harm of injury, including but not limited to permanent brain damage, was increased; that his medical condition worsened and his chance of recovery was diminished; that the disabled Plaintiff will suffer from wage loss and became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses; and that the Plenary Guardian of the disabled's Estate and Person, JASMINE MURILLO, became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses, including wage loss.

12.     That the Plaintiff is entitled to her costs and reasonable attorney's fees incurred herein pursuant to 42 United States Code, Section 1988.

WHEREFORE, the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled, prays judgment against Defendant, DR. FRANCIS KAYIRA, for said sum for medical, drug, and incidental expenses and for general damages according to proof, Section 1988 costs and attorney's fees, and for such other and further relief as this court deems just and proper.

## COUNT III
### Negligence Claim against Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.

1.     That during the month of May 2015, and at all times prior and subsequent thereto, the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., was engaged in offering medical care and attention, facilities and supplies to inmates, including the disabled Plaintiff herein, at the Graham Correctional Center, in the City of Hillsboro and State of Illinois, and engaged on its staff various physicians and medical personnel.

2.     That at all times relevant herein, the Defendants, WEXFORD HEALTH SOURCES,

15

INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., held itself out, pretended and otherwise informed Graham Correctional Center's  inmates, and more particularly, in the instance of the disabled Plaintiff, MARIO RAMIREZ, that Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., had and possessed the requisite skill, know-how, facilities, personnel, equipment and information to properly care for and treat the disabled Plaintiff, MARIO RAMIREZ.

3.     That in May 2015, and for some time prior and subsequent thereto, the disabled Plaintiff, MARIO RAMIREZ, was imprisoned at the Graham Correctional Center and was placed under the custody, ward, care and supervision of the Graham Correctional Center prison and Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its physicians, staff, supervisors, employees, agents and apparent agents, including but not limited to, DR. FRANCIS KAYIRA, as aforesaid; that the disabled Plaintiff possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend or cure himself.

4.     That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was an inmate and dependent upon and under the control of Graham Correctional Center prison and Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its physicians, staff, supervisors, employees, agents and apparent agents, including but not limited to, DR. FRANCIS KAYIRA.

5.     That at all times mentioned herein, the Defendant, DR. FRANCIS KAYIRA, was a

physician duly licensed under the laws of the State of Illinois and an employee, physician, agent and/or apparent agent, of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and as such practiced his profession in the medical facilities of the Graham Correctional Center pursuant to his employment.

6.      That in May 2015, and for some time prior and subsequent thereto, DR. FRANCIS KAYIRA, as agent, apparent agent, physician, servant, and/or employee, of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC. , in his professional capacity as aforesaid, while acting in the scope of his employment and/or agency as aforesaid, did then and there have come under their care and did attend to and treat the disabled Plaintiff, MARIO RAMIREZ, while the disabled Plaintiff was a prisoner at Graham Correctional Center.

7.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, cooperated fully with the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its physicians, staff, supervisors, employees, agents and apparent agents, including but not limited to, DR. FRANCIS KAYIRA.

8.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was in the exercise of ordinary care and caution for his own safety.

9.      That it then and there became and was the duty of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly

17

authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, to render medical care, services and attention consistent with the medical requirements of the patients and/or prisoners therein, so as not to cause injury to said prisoners therein who are under their control and dependent upon for care and treatment, including the disabled Plaintiff.

10.     That there was a duty on the part of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., individually and by and through its duly authorized agents, apparent agents, servants, employees, medical personnel and physicians, including but not limited to: Defendant, DR. FRANCIS KAYIRA, to treat the disabled Plaintiff, MARIO RAMIREZ, with that degree of knowledge, skill, and care possessed by a reasonably well-qualified physician in their community or a similar community, and to exercise that degree of knowledge, skill, and care commonly exercised by other members of their profession.

11.     That notwithstanding its aforesaid duties, the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, was then and there guilty of one or more of the following wrongful acts and/or omissions:

(a)     Failed to provide for proper and adequate medical care and treatment of persons in their custody, including the disabled Plaintiff, MARIO RAMIREZ, pursuant to 730 ILCS 3/3-7-2(d); or

(b)     Failed to exercise reasonable care in protecting inmates', namely the disabled Plaintiff's, health and safety; or

(c)     Failed to provide proper and adequate medical care and attention to the disabled

18

Plaintiff; or

(d)     Failed to timely provide proper and adequate medical care and attention to the disabled Plaintiff; or

(e)     Failed to intervene on behalf of the disabled Plaintiff to see that proper and adequate medical care and attention was being given for the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(f)     Failed to properly and adequately monitor the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(g)     Failed to properly and adequately alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(h)     Improperly and inadequately treated and/or attended to the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(i)     Failed to diagnose and/or recognize Mr. Ramirez's hypovolemia due to dehydration on and after May 23, 2015; or

(j)     Failed to timely diagnose and/or recognize Mr. Ramirez's hypovolemia due to dehydration on and after May 23, 2015; or

(k)     Improperly and unskillfully treated the disabled Plaintiff in a manner that necessitated further treatment, hospitalizations, and surgeries.

12.     That as a direct and proximate result of one or more of the foregoing wrongful acts and omissions of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was thereby injured, including but not limited to: sepsis and necrosis leading to anoxic brain injury and disabled Plaintiff, MARIO RAMIREZ, being in a persistent vegetative state.

13.     That as a direct and proximate result of one or more of the foregoing wrongful acts and omissions of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was then and there injured both internally and externally; that he suffered and continues to suffer from severe and permanent injuries, including but not limited to: permanent brain injury; that he sustained a severe shock and damage to his nervous system and other systems of his body; that he suffered and continues to suffer from loss of a normal life;  that he suffered and continues to suffer from acute and prolonged physical and mental pain and suffering; that the risk or harm of injury, including but not limited to permanent brain damage, was increased; that his medical condition worsened and his chance of recovery was diminished; that the disabled Plaintiff will suffer from wage loss and became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses; and that the Plenary Guardian of the disabled's Estate and Person, JASMINE MURILLO, became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses, including wage loss.

14.     That the Plaintiff's damages are in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

WHEREFORE, the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled, prays judgment against the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.,

for said sum for medical, drug, and incidental expenses and for general damages according to proof, and for such other and further relief as this court deems just and proper.

## COUNT IV
### Negligence Claim against Defendant, DR. FRANCIS KAYIRA

1.      That at all times mentioned herein, the Defendant, DR. FRANCIS KAYIRA, was a physician duly licensed under the laws of the State of Illinois, and as such practiced his profession in the medical facilities of the Graham Correctional Center.

2.      That in May 2015, and for some time prior and subsequent thereto, the disabled Plaintiff, MARIO RAMIREZ, was imprisoned at the Graham Correctional Center and was placed under the custody, ward, care and supervision of the Graham Correctional Center prison and Defendant, DR. FRANCIS KAYIRA, as aforesaid; that the disabled Plaintiff possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend or cure himself.

3.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was an inmate and dependent upon and under the control of Graham Correctional Center prison and Defendant, DR. FRANCIS KAYIRA.

4.      That in May 2015, and for some time prior and subsequent thereto, Defendant, DR. FRANCIS KAYIRA, did then and there have come under his care and did attend to and treat the disabled Plaintiff, MARIO RAMIREZ, while the disabled Plaintiff was a prisoner at Graham Correctional Center.

5.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, cooperated fully with the Defendant, DR. FRANCIS KAYIRA.

6.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was in the exercise of ordinary care and caution for his own safety.

7.      That it then and there became and was the duty of the Defendant, DR. FRANCIS

KAYIRA, to render medical care, services and attention consistent with the medical requirements of the patients and/or prisoners therein, so as not to cause injury to said prisoners therein who are under its control and dependent upon for care and treatment, including the disabled Plaintiff.

8.      That there was a duty on the part of the Defendant, DR. FRANCIS KAYIRA, to treat the disabled Plaintiff, MARIO RAMIREZ, with that degree of knowledge, skill, and care possessed by a reasonably well-qualified physician in his community or a similar community, and to exercise that degree of knowledge, skill, and care commonly exercised by other members of his profession.

9.      That notwithstanding his aforesaid duties, the Defendant, DR. FRANCIS KAYIRA, was then and there guilty of one or more of the following wrongful acts and/or omissions:

(a)     Failed to provide proper and adequate medical care and attention to the disabled Plaintiff; or

(b)     Failed to timely provide proper and adequate medical care and attention to the disabled Plaintiff; or

(c)     Failed to intervene on behalf of the disabled Plaintiff to see that proper and adequate medical care and attention was being given for the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(d)     Failed to properly and adequately monitor the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(e)     Failed to properly and adequately alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(f)     Improperly and inadequately treated and/or attended to the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; or

(g)     Failed to diagnose and/or recognize Mr. Ramirez's hypovolemia due to dehydration on and after May 23, 2015; or

(h)     Failed to timely diagnose and/or recognize Mr. Ramirez's hypovolemia due to dehydration on and after May 23, 2015; or

(i)    Improperly and unskillfully treated the disabled Plaintiff in a manner that necessitated further treatment, hospitalizations, and surgeries.

10.    That as a direct and proximate result of one or more of the foregoing wrongful acts and omissions of the Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was thereby injured, including but not limited to: sepsis and necrosis leading to anoxic brain injury and disabled Plaintiff, MARIO RAMIREZ, being in a persistent vegetative state.

11.    That as a direct and proximate result of one or more of the foregoing wrongful acts and omissions of the Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was then and there injured both internally and externally; that he suffered and continues to suffer from severe and permanent injuries, including but not limited to: permanent brain injury; that he sustained a severe shock and damage to his nervous system and other systems of his body; that he suffered and continues to suffer from loss of a normal life;  that he suffered and continues to suffer from acute and prolonged physical and mental pain and suffering; that the risk or harm of injury, including but not limited to permanent brain damage, was increased; that his medical condition worsened and his chance of recovery was diminished; that the disabled Plaintiff will suffer from wage loss and became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses; and that the Plenary Guardian of the disabled's Estate and Person, JASMINE MURILLO, became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses, including wage loss.

12.    That the Plaintiff's damages are in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

WHEREFORE, the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of

the Estate and Person of MARIO RAMIREZ, disabled, prays judgment against the Defendant, DR.

FRANCIS KAYIRA, for said sum for medical, drug, and incidental expenses and for general

damages according to proof, and for such other and further relief as this court deems just and proper.

**COUNT V**

**Willful and Wanton Claim against Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.**

1.      That during the month of May 2015, and at all times prior and subsequent thereto, the

Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP

CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.,

was engaged in offering medical care and attention, facilities and supplies to inmates, including the

disabled Plaintiff herein, at the Graham Correctional Center, in the City of Hillsboro and State of

Illinois, and engaged on its staff various physicians and medical personnel.

2.      That at all times relevant herein, the Defendants, WEXFORD HEALTH SOURCES,

INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and

d/b/a WEXFORD HEALTH SOURCES, INC., held itself out, pretended and otherwise informed

Graham Correctional Center's  inmates, and more particularly, in the instance of the disabled

Plaintiff, MARIO RAMIREZ, that Defendants, WEXFORD HEALTH SOURCES, INC., a

corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a

WEXFORD HEALTH SOURCES, INC., had and possessed the requisite skill, know-how, facilities,

personnel, equipment and information to properly care for and treat the disabled Plaintiff, MARIO

RAMIREZ.

3.      That in May 2015, and for some time prior and subsequent thereto, the disabled

Plaintiff, MARIO RAMIREZ, was imprisoned at the Graham Correctional Center and was placed

under the custody, ward, care and supervision of the Graham Correctional Center prison and

24

Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its physicians, staff, supervisors, employees, agents and apparent agents, including but not limited to, DR. FRANCIS KAYIRA, as aforesaid; that the disabled Plaintiff possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend or cure himself.

4.     That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was an inmate and dependent upon and under the control of Graham Correctional Center prison and Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and its physicians, staff, supervisors, employees, agents and apparent agents, including but not limited to, DR. FRANCIS KAYIRA, and that the disabled Plaintiff, as a prisoner, was deprived of his normal opportunities for protection, treatment and care.

5.     That at all times mentioned herein, the Defendant, DR. FRANCIS KAYIRA, was a physician duly licensed under the laws of the State of Illinois and an employee, physician, agent and/or apparent agent, of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., and as such practiced his profession in the medical facilities of the Graham Correctional Center pursuant to his employment.

6.     That in May 2015, and for some time prior and subsequent thereto, DR. FRANCIS KAYIRA, as agent, apparent agent, physician, servant, and/or employee, of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC. , in his professional capacity as aforesaid, while acting in the scope of his employment and/or agency

25

as aforesaid, did then and there have come under their care and did attend to and treat the disabled

Plaintiff, MARIO RAMIREZ, while the disabled Plaintiff was a prisoner at Graham Correctional

Center.

7.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ,

cooperated fully with the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and

THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD

HEALTH SOURCES, INC., and its duly authorized agents, apparent agents, physicians, servants,

and/or employees, including but not limited to, DR. FRANCIS KAYIRA.

8.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was in

the exercise of ordinary care and caution for his own safety and free from willful and wanton

misconduct.

9.      That at all times material herein, and for some time prior to, the disabled Plaintiff,

MARIO RAMIREZ, was experiencing symptoms and/or signs of hypovolemia, including but not

limited to: dehydration, diarrhea, vomiting, hyponatremia and tachycardia, during his incarceration at

Graham Correctional Center.

10.     The Defendant knew the disabled Plaintiff was experiencing symptoms and/or signs

of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or

tachycardia, for at least one (1) week prior to the first May 23, 2015 medical encounter;

11.     The disabled Plaintiff continued to experienced symptoms and/or signs of

hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or

tachycardia, through June 4, 2015;

12.     The Defendant knew the disabled Plaintiff was experiencing continued symptoms

and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting,

hyponatremia and/or tachycardia, through June 4, 2015, including but not limited to documenting these symptoms at his medical encounters on or about May 23, 2015, May 29, 2015, and June 1, 2015, as well as daily through his June 1, 2015 to June 4, 2015 admission to the infirmary at Graham Correctional Center;

13.    The Defendant knew or should have known said continuing symptoms and/or signs of hypovolemia posed serious and/or substantial risks to the health and well-being of the disabled Plaintiff if not properly treated or if left untreated or undiagnosed, including but not limited to: necrosis, sepsis, brain injury, and/or death.

14.    That it then and there became and was the duty of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, to render medical services consistent with the medical necessities of the prisoners therein, so as not to cause injury to said prisoners therein who are under their control and dependent upon for care and treatment, including the disabled Plaintiff, and to refrain from willful and wanton conduct which would endanger the safety and/or welfare of those prisoners, including the disabled Plaintiff, under their custody.

15.    That notwithstanding its aforesaid duty and in conscious disregard and/or utter indifference to Defendant's knowledge of said symptoms and serious and substantial risks to the disabled Plaintiff, the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, was then and

there guilty of one or more of the following willful and wanton acts and/or omissions:

(a)     Failed to provide for proper and adequate medical care and treatment of persons in their custody, including the disabled Plaintiff, MARIO RAMIREZ, pursuant to 730 ILCS 3/3-7-2(d), when Defendant knew or should have known said failure displayed an utter indifference to the safety and/or welfare of those prisoners, including the disabled Plaintiff, under its custody and/or care; or

(b)     Failed to properly and adequately monitor the disabled Plaintiff's medical condition in utter and/or deliberate indifference of said risks; or

(c)     Failed to properly and adequately alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

(d)     Improperly and inadequately treated and/or attended to the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

(e)     Failed to properly and adequately and/or timely diagnose disabled Plaintiff's hypovolemia due to dehydration in utter and/or deliberate indifference of said risks; or

(f)     Discontinued the disabled Plaintiff's IV fluid administration in spite of continued and/or unresolved symptoms and/or signs of hypovolemia in utter and/or deliberate indifference of said risks.

16.     That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was deprived necessary medical treatment and was thereby injured, including but not limited to: sepsis and necrosis leading to anoxic brain injury and disabled Plaintiff, MARIO RAMIREZ, being in a persistent vegetative state.

17.     That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions of the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation;

and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., by and through its duly authorized agents, apparent agents, physicians, servants, and/or employees, including but not limited to, Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was then and there injured both internally and externally; that he suffered and continues to suffer from severe and permanent injuries, including but not limited to: permanent brain injury; that he sustained a severe shock and damage to his nervous system and other systems of his body; that he suffered and continues to suffer from loss of a normal life;  that he suffered and continues to suffer from acute and prolonged physical and mental pain and suffering; that the risk or harm of injury, including but not limited to permanent brain damage, was increased; that his medical condition worsened and his chance of recovery was diminished; that the disabled Plaintiff will suffer from wage loss and became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses; and that the Plenary Guardian of the disabled's Estate and Person, JASMINE MURILLO, became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses, including wage loss.

18.    That the Plaintiff's damages are in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

WHEREFORE, the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled, prays judgment against the Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; and THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC., for said sum for medical, drug, and incidental expenses and for general damages according to proof, and for such other and further relief as this court deems just and proper.

## COUNT VI
## Willful and Wanton Claim against Defendant, Dr. Francis Kayira

1.      That at all times mentioned herein, the Defendant, DR. FRANCIS KAYIRA, was a physician duly licensed under the laws of the State of Illinois, and as such practiced his profession in the medical facilities of the Graham Correctional Center.

2.      That in May 2015, and for some time prior and subsequent thereto, the disabled Plaintiff, MARIO RAMIREZ, was imprisoned at the Graham Correctional Center and was placed under the custody, ward, care and supervision of the Graham Correctional Center prison and Defendant, DR. FRANCIS KAYIRA, as aforesaid; that the disabled Plaintiff possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend or cure himself.

3.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was an inmate and dependent upon and under the control of Graham Correctional Center prison and Defendant, DR. FRANCIS KAYIRA, and that the disabled Plaintiff, as a prisoner, was deprived of his normal opportunities for protection, treatment and care.

4.      That in May 2015, and for some time prior and subsequent thereto, Defendant, DR. FRANCIS KAYIRA, did then and there have come under his care and did attend to and treat the disabled Plaintiff, MARIO RAMIREZ, while the disabled Plaintiff was a prisoner at Graham Correctional Center.

5.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, cooperated fully with the Defendant, DR. FRANCIS KAYIRA.

6.      That at all times material herein, the disabled Plaintiff, MARIO RAMIREZ, was in the exercise of ordinary care and caution for his own safety and free from willful and wanton misconduct.

7.      That at all times material herein, and for some time prior to, the disabled Plaintiff,

30

MARIO RAMIREZ, was experiencing symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and tachycardia, during his incarceration at Graham Correctional Center.

8.     The Defendant, DR. FRANCIS KAYIRA, knew the disabled Plaintiff was experiencing symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, for at least one (1) week prior to the first May 23, 2015 medical encounter;

9.     The disabled Plaintiff continued to experienced symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, through June 4, 2015;

10.     The Defendant, DR. FRANCIS KAYIRA, knew the disabled Plaintiff was experiencing continued symptoms and/or signs of hypovolemia, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia, through June 4, 2015, including but not limited to documenting these symptoms at his medical encounters on or about May 23, 2015, May 29, 2015, and June 1, 2015, as well as daily through his June 1, 2015 to June 4, 2015 admission to the infirmary at Graham Correctional Center;

11.     The Defendant, DR. FRANCIS KAYIRA, knew or should have known said continuing symptoms and/or signs of hypovolemia posed serious and/or substantial risks to the health and well-being of the disabled Plaintiff if not properly treated or if left untreated or undiagnosed, including but not limited to: necrosis, sepsis, brain injury, and/or death.

12.     That it then and there became and was the duty of the Defendant, DR. FRANCIS KAYIRA, to render medical services consistent with the medical necessities of the prisoners therein, so as not to cause injury to said prisoners therein who are under their control and dependent upon for

care and treatment, including the disabled Plaintiff, and to refrain from willful and wanton conduct which would endanger the safety and/or welfare of those prisoners, including the disabled Plaintiff, under their custody.

13.     That notwithstanding his aforesaid duty and in conscious disregard and/or utter indifference to Defendant's knowledge of said symptoms and serious and substantial risks to the disabled Plaintiff, the Defendant, DR. FRANCIS KAYIRA, was then and there guilty of one or more of the following willful and wanton acts and/or omissions:

      (a)    Failed to properly and adequately monitor the disabled Plaintiff's medical condition in utter and/or deliberate indifference of said risks; or

      (b)    Failed to properly and adequately alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

      (c)    Improperly and inadequately treated and/or attended to the disabled Plaintiff's medical condition and symptoms in utter and/or deliberate indifference of said risks; or

      (d)    Failed to properly and adequately and/or timely diagnose disabled Plaintiff's hypovolemia due to dehydration in utter and/or deliberate indifference of said risks; or

      (e)    Discontinued the disabled Plaintiff's IV fluid administration in spite of continued and/or unresolved symptoms and/or signs of hypovolemia in utter and/or deliberate indifference of said risks.

14.     That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions of the Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO RAMIREZ, was deprived necessary medical treatment and was thereby injured, including but not limited to: sepsis and necrosis leading to anoxic brain injury and disabled Plaintiff, MARIO RAMIREZ, being in a persistent vegetative state.

15.     That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions of the Defendant, DR. FRANCIS KAYIRA, the disabled Plaintiff, MARIO

RAMIREZ, was then and there injured both internally and externally; that he suffered and continues to suffer from severe and permanent injuries, including but not limited to: permanent brain injury; that he sustained a severe shock and damage to his nervous system and other systems of his body; that he suffered and continues to suffer from loss of a normal life; that he suffered and continues to suffer from acute and prolonged physical and mental pain and suffering; that the risk or harm of injury, including but not limited to permanent brain damage, was increased; that his medical condition worsened and his chance of recovery was diminished; that the disabled Plaintiff will suffer from wage loss and became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses; and that the Plenary Guardian of the disabled's Estate and Person, JASMINE MURILLO, became liable for great sums of money for medical, hospital care and treatment, and attendant care, as well as incurring other expenses, including wage loss.

16. That the Plaintiff's damages are in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

WHEREFORE, the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled, prays judgment against the Defendant, DR. FRANCIS KAYIRA, for said sum for medical, drug, and incidental expenses and for general damages according to proof, and for such other and further relief as this court deems just and proper.

## COUNT VII

1-96. Plaintiff JASMINE MURILLO, restates and realleges paragraphs one (1) through twenty-four (24) inclusive of Count I hereof, restates and realleges paragraphs one (1) through twelve (12) inclusive of Count II hereof, restates and realleges paragraphs one (1) through fourteen (14) inclusive of Count III hereof, restates and realleges paragraphs one (1) through twelve (12) inclusive

of Count IV hereof, restates and realleges paragraphs one (1) through eighteen (18) inclusive of Count V hereof, restates and realleges paragraphs one (1) through sixteen (16) inclusive of Count VI hereof, as and for paragraphs one (1) through ninety-six (96) of this Count VII, as though specifically realleged herein and hereby incorporates the same by this reference

97.     That at all times relevant and subsequent thereto, the Plaintiff, JASMINE MURILLO, as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled, did then and there become liable for large sums of money for the medical costs of the disabled Plaintiff, MARIO RAMIREZ, pursuant to the Family Expense Act, 750 ILCS 65/15.

98.     That the Plaintiff's damages are in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

WHEREFORE, the Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled, prays judgment against Defendants, WEXFORD HEALTH SOURCES, INC., a corporation; THE BANTRY GROUP CORPORATION, a corporation, individually, and d/b/a WEXFORD HEALTH SOURCES, INC.; and DR. FRANCIS KAYIRA, and each of them, for medical costs according to proof and for such other and further relief as this Court deems just and proper.

Plaintiff, JASMINE MURILLO, individually and as Plenary Guardian of the Estate and Person of MARIO RAMIREZ, disabled

By: /s/ Cindy G. Fluxgold_____
One of Plaintiff's Attorneys

GOLDSTEIN, FLUXGOLD & BARON, P.C.
33 North Dearborn Street, Suite 950
Chicago, IL  60602
(312) 726-7772
gfblaw@gfblaw.net

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

JASMINE MURILLO, individually and as Plenary Guardian of the )
Estate and Person of MARIO RAMIREZ, disabled, )
  )
                  Plaintiff, )
-vs- )No.17 CV 3181
  )
WEXFORD HEALTH SOURCES, INC., a corporation; ) Judge Michael M. Mihm
THE BANTRY GROUP CORPORATION, a corporation, individually, and )
d/b/a WEXFORD HEALTH SOURCES, INC.; and )
DR. FRANCIS KAYIRA, )
                  Defendants. )

## AFFIDAVIT OF PLAINTIFF'S ATTORNEY

I, CINDY G. FLUXGOLD, being first duly sworn, on oath, depose and state as follows:

1) That I am one of the attorneys for the Plaintiff herein and if called to testify, have knowledge of the facts stated herein.

2) That before the filing of this physician's report, pursuant to 735 ILCS §5/2-622 (a)(1), the Affiant consulted and reviewed the facts of this case with a physician who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last (6) years or teaches or has taught within the last (6) years in the same areas of health care or medicine that are at issue in this particular action; and (iii) is qualified by experience and has demonstrated competence in the subject areas of this case.

3) The Affiant has concluded on the basis of the reviewing physician's reviews and consultations, that there is a reasonable and meritorious cause for the filing of this action.

FURTHER AFFIANT SAYETH NOT.

                                                            CINDY G. FLUXGOLD

SUBSCRIBED AND SWORN TO
Before me this 9th day of
_____November_____, 2017.

"OFFICIAL SEAL"
RACHAEL AGUAS
Notary Public, State of Illinois
My Commission Expires 11/2/2020

NOTARY PUBLIC
GOLDSTEIN, FLUXGOLD & BARON, P.C.
33 North Dearborn Street, Suite 950
Chicago, IL 60602
(312)726-7772
gfblaw@gfblaw.net

**ATTACHMENT PURSUANT TO SECTION 2-622**
**OF THE CODE OF CIVIL PROCEDURE**

1.      I am a physician licensed to practice medicine.  I am knowledgeable in the relevant issues involved in this particular action.  I practice or have practiced within the last (6) years in the same areas of health care or medicine that are at issue in this particular action. I am qualified by experience and have demonstrated competence in the subject areas of this case.

2.      I have reviewed the records pertinent to the care and treatment rendered to MARIO RAMIREZ, disabled, at Graham Correctional Center, Hillsboro Hospital and St. John's Hospital.

3.      Following and based upon my review of the aforementioned records and reports pertinent to the care received by Mario Ramirez at Graham Correctional Center, with specific focus and concentration on the events, treatment, infirmary admissions and visits subsequent to Mario Ramirez' May 23, 2015 presentation to the infirmary at Graham Correctional Center up to and including his transfers to Hillsboro Hospital and St. John's Hospital on or about June 4, 2015, I am of the opinion that there is a reasonable and meritorious basis for the filing of a cause of action in this case against Dr. Francis Kayira, Wexford Health Sources/Bantry Group Corporation and the respective physician groups of the aforementioned physician, if any.

4.      Based upon my review of the pertinent records, on May 23, 2015, Mario Ramirez presented to the infirmary at Graham Correctional Center complaining of a one week history of diarrhea, vomiting, fever and chills. He was encouraged to increase his oral fluid.  Dr. Kayira was informed of the visit and Mr. Ramirez's vitals

On May 29, 2015, Mr. Ramirez returned to the infirmary at Graham Correctional Center with unimproved symptoms.  Laboratory tests were taken and Dr. Kayira was informed of Mr. Ramirez;'s vitals and laboratory results. Imodium was prescribed and follow-up was scheduled for June 2, 2015 with Dr. Kayira.

On June 1, 2015, Mr. Ramirez returned to the infirmary with continued persistent diarrhea and was examined by Dr. Kayira.  Mr. Ramirez presented clammy, afebrile, weak and shaky with a pulse of 111.  Mr. Ramirez was admitted to the infirmary with suspected dehydration and possible Cushing's syndrome.  IV fluids were prescribed and administered.

On June 2, 2015, Mr. Ramirez remained on IV fluids and diarrhea continued.  Mr. Ramirez was examined by Dr. Kayira.

On June 4, 2015, at approximately 9:30 a.m., Mr. Ramirez was still experiencing diarrhea but frequency had slowed.  Dr. Kayira discontinued the IV fluids and diet was advanced.

On June 4, 2015, at approximately 1:15 p.m., Mr. Ramirez complained of difficulty breathing to the infirmary nurses and subsequently became unresponsive, pulseless and apneic.  Pulse was restored and Mr. Ramirez was transferred via ambulance to Hillsboro hospital.

On June 4, 2015, upon ER presentation at Hillsboro hospital, Mr. Ramirez was in respiratory failure and was intubated.

On June 4, 2015, he was then transferred to St. John's hospital where he was hypotensive and acidotic.  X-ray revealed free air and a total abdominal colectomy was performed.  Pathology revealed multiple colonic mucosal ulcerations with areas of transmural necrosis, as well as perforations and acute serositis due to necrotic bowel.  He remained in a comatose condition during his stay at St. John's hospital.  He underwent multiple procedures at St. John's hospital as a result of his condition.

On August 5, 2015, he was discharged from St. John's hospital in a persistent vegetative state secondary to anoxic brain injury.

5.      Based on my experience, education, training and knowledge, and review of the pertinent records, I am of the opinion that during and after Mario Ramirez's infirmary visit on or about May 23, 2015, the Standard of Care required: Dr. Francis Kayira; Wexford Health Sources/Bantry Group Corporation, by and through its agents, employees, apparent agents, and/or physicians, including but not limited to: Dr. Kayira; and the physician groups of Dr. Kayira, if any, to: provide proper and adequate and/or timely medical care and attention to Mr. Ramirez; diagnose and/or recognize and/or timely diagnose and/or recognize Mr. Ramirez's hypovolemia due to dehydration on and after May 23, 2015; ensure and/or intervene to ensure that proper and adequate and/or timely medical care and attention was provided to Mr. Ramirez; properly and adequately monitor the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia; and properly and adequately alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015, including but not limited to: dehydration, diarrhea, vomiting, hyponatremia and/or tachycardia.

6.      Based on my experience, education, training and knowledge, and review of the pertinent records listed above, I am of the opinion that Dr. Francis Kayira deviated from the aforementioned applicable Standard of Care when Dr. Francis Kayira: failed to provide proper and adequate and/or timely medical care and attention to Mr. Ramirez; failed to diagnose and/or recognize and/or timely diagnose and/or recognize Mr. Ramirez's hypovolemia due to dehydration on and after May 23, 2015; failed to ensure that proper and adequate and/or timely medical care and attention was provided to Mr. Ramirez; failed properly and adequately monitor the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015; or failed to alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015.

7.      Based on my experience, education, training and knowledge, and review of the pertinent records listed above, I am of the opinion that Dr. Francis Kayira deviated from the aforementioned applicable Standard of Care when Dr. Francis Kayira: provided improper and adequate medical care and attention to Mr. Ramirez; improperly diagnosed Mr. Ramirez's medical condition and symptoms on and after May 23, 2015; improperly and inadequately monitored the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015; or improperly and inadequately treated and/or attended to the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015.

8.      Based on my experience, education, training and knowledge, and review of the pertinent records listed above, and presuming that an institution and/or entity such as Wexford Health Sources/Bantry Group Corporation is under the same legal obligation to comply with the applicable standard of care as its agent, apparent agent and/or employee, Dr. Francis Kayira, I am of the opinion that Wexford Health Sources/Bantry Group Corporation deviated the aforementioned applicable Standard of Care by failing to intervene on behalf of the disabled Plaintiff, Mario Ramirez, to see that proper and adequate medical care and attention was given to Mario Ramirez by its duly authorized agents, employees, apparent agents, and/or physicians, including but not limited to Dr. Francis Kayira.  In addition, Wexford Health Sources/Bantry Group Corporation, by and through its duly authorized agents, employees, apparent agents, and/or physicians, including but not

limited to Dr. Francis Kayira, deviated from the aforementioned applicable Standard of Care by: failing to provide proper and adequate and/or timely medical care and attention to Mr. Ramirez; failing to diagnose and/or recognize and/or timely diagnose and/or recognize Mr. Ramirez's hypovolemia due to dehydration on and after May 23, 2015; failing properly and adequately monitor the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015; or failing to alleviate, treat and/or control the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015.

9.      Based on my experience, education, training and knowledge, and review of the pertinent records listed above, and presuming that an institution and/or entity such as Wexford Health Sources/Bantry Group Corporation is under the same legal obligation to comply with the applicable standard of care as its agent, apparent agent and/or employee, Dr. Francis Kayira, I am of the opinion that Wexford Health Sources/Bantry Group Corporation by and through its duly authorized agents, employees, apparent agents, and/or physicians, including but not limited to Dr. Francis Kayira, deviated from the aforementioned applicable Standard of Care by: providing improper and adequate medical care and attention to Mr. Ramirez; improperly diagnosing Mr. Ramirez's medical condition and symptoms on and after May 23, 2015; improperly and inadequately monitoring the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015; or improperly and inadequately treating and/or attending to the disabled Plaintiff's medical condition and symptoms on and after May 23, 2015.

10.      In my opinion, said failures and/or deviations, independently and/or in combination, caused or contributed to cause severe injuries, including but not limited: a loss of chance of survival and/or recovery from Mr. Ramirez's underlying hypovolemia, and a worsening of Mr. Ramirez's underlying hypovolemia causing sepsis and necrosis leading to permanent anoxic brain injury.

Order Appointing Plenary Guardian of Disabled Person                                (02/09/15) CCP N204 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, PROBATE DIVISION

Estate of

MARIO RAMIREZ,

_____
                         **A Disabled Person**

No.  17 P  **248**

### ORDER APPOINTING PLENARY GUARDIAN OF DISABLED PERSON

On the Petition of  Jasmine Murillo _____ for the appointment of
                                          (printed name of the Petitioner)

Jasmine Murillo _____ as Guardian of the ☐ estate ☐ person ☒ estate and person of
(printed name of the proposed Guardian)

Mario Ramirez _____ (the "Respondent"),
                                          (printed name of the Respondent)

\* and the nominated Guardian being a nonresident of Illinois and having complied with §1-11 of the Probate Act of 1975 (755 ILCS 5/1-11) by filing with the Court a Designation of Resident Agent to accept service of process, notice or demand required or permitted by law to be served upon the Guardian; and the Court having found that:

\*\*1.  The Court has jurisdiction to appoint a Guardian under  §§203-204 of the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act ("UAGPPJA") (775 ILCS 8/203-204) because:

☒ (a)  Illinois is the Respondent's "home state" as defined in §201(a)(2) of the UAGPPJA;

☐ (b)  _____ is the Respondent's "home state", but Illinois is a "significant-connection state" as defined in §201(a)(3) of the UAGPPJA, and one of the additional requirements specified in §203(2)(A) - (B) of the UAGPPJA applies;

☐ (c)  Illinois is not the Respondent's "home state" or a  significant-connection state" as defined in §201(a)(2) - (3) of the UAGPPJA, but the "home state" and every "significant-connection state" have declined to exercise jurisdiction because Illinois is the most appropriate forum;

☐ (d)  Illinois is not the Respondent's "home state" or "significant-connection state" as defined in §201(a)(2) - (3) of the UAGPPJA, but the circumstances involved constitute an "emergency" as defined in §201(a)(1) of the UAGPPJA, and as a result, this Court has "special jurisdiction" under §204(a) of the UAGPPJA.

2.  In accordance with §11a-3 of the Probate Act, by clear and convincing evidence the Respondent is a disabled person  and:

\*\*\*(a) totally lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his or her person;

\*\*\*(b) is totally unable to manage his or her estate or financial affairs;

3.  Limited guardianship will not provide sufficient protection for:
☐ the disabled person OR☐ the disabled person's estate OR☒ the disabled person, and the disabled person's estate;

∧   The appointment of a Guardian _ad litem_ was not necessary for the protection of the disabled person or a reasonably informed decision on the Petition;

~~No suitable and willing person other than the State Guardian could be found to accept the guardianship appointment;~~

Strike if the nominated Limited Guardian is a resident of Illinois.

**Check the appropriate basis for jurisdiction.**

'\* Strike if not applicable.

PLAINTIFF'S
EXHIBIT
A

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL**
                                Page 1 of 2

Order Appointing Plenary Guardian of Disabled Person                    (02/09/15) CCP N204 B

6.   The factual basis for the above findings of the Court is as follows:

The Respondent is in a coma due to severe anoxic brain injury requiring mechanical ventilation. He is

nonresponsive. _Per CCP 211 Report By Dr Nawoor ABOuR_

_Rahman   of  12/29/16_

**IT IS ORDERED that:**

\*\*\* A.   The disabled person's presence at the hearing is excused for the reason that the record shows that the disabled person:
☐ refuses to be present;   **OR** ☒ will suffer harm if required to attend;

\*\*\* B.   Jasmine Murillo _____ be appointed as Plenary Guardian of the
(printed name of the proposed Guardian)
☐ estate ☒ estate and person, of the disabled person;

~~\*\*\* C.   _____ be appointed as Plenary Guardian of the person of the disabled person.~~
~~(printed name of the proposed Guardian)~~

D.   Letters of Plenary guardianship issue in accordance with the provisions of this Order.

\*\*\* E.   i.   The bond of the Plenary Guardian of the ☐ estate ☒ estate and person, and the surety therein, be approved.
~~ii.   The bond of the Plenary Guardian of the person be approved.~~

\*\*\* F.   The Plenary Guardian of the estate present to the Court:

i.   an Inventory as required by Section §14-1 of the Probate Act within 60 days from the date of this Order, or shall appear before the Court on _May 9_ ,2017 at 10:00 a.m./p.m. **(not more than sixty (60) days after the date of this Order).**

ii.   a verified Account as required by §24-11 (a) of the Probate Act within 30 days after the expiration of one year from the date of this Order, and annually thereafter, or shall appear before the Court on _March 29_ ,2018 at 10:00 a.m./p.m. **(not more than thirteen (13) months after the date of this Order)**

\*\*\*G.   The Plenary Guardian of the person file a Report as required by §11a-17(b) of the Probate Act within 30 days after the expiration of one year from the date of this Order, and annually thereafter, or shall appear before the Court on _March 29_ , 2018 at 10:00 a.m./p.m. **(not more than thirteen (13) months after the date of this Order).**

H.   The Clerk of the Circuit Court of Cook County shall mail to the disabled person at the residence address set forth in the Petition filed herein a written statement informing the disabled person of the person's rights under §11a-20 of the Probate Act to petition for termination of the adjudication of disability, revocation of the letters of Plenary guardianship of the estate or person, or both, or modification of the duties of the Plenary Guardian, and of the procedures for petitioning the Court.

I.   The Clerk of Circuit Court of Cook County send notification and a copy of this Order to the Department of State Police, rearm Owner's Identification Office, in accordance with §11a-24 of the Probate Act.

J. ☒   (4826) The Clerk of the Circuit Court of Cook County shall immediately notify the Department of State Police, Firearm Owner's Identification Department (FOID), and forward a copy of the Court Order to the Department of State Police, Firearm Services Bureau, 801 S. 7th Street, Springfield, IL 62703.

Full Name: Ramirez ___ Mario ___ _____   Date of Birth: ▉ / ▉ / ▉
(Last)           (First)         (Middle)

☐Female ☒ Male   FOID # (if applicable): _____

**\*\*\*Strike if not applicable.**

Atty. No.: 70693
Name: Mitchell S. Feinberg
Firm Name: Chuhak & Tecson, P.C.
Attorney for Petitioner: Jasmine Murillo
Address: 30 S. Wacker Dr., Ste 2600
City/State/Zip Code: Chicago, Illinois 60606
Telephone: (312) 444-9300
Email Address: mfeinberg@chuhak.com

ENTERED
JUDGE KATHLEEN M. McGURY · 1870
MAR 24 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
COOK COUNTY, IL

Date _____

Judge _____   Judge's No. _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 2 of 2